IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALANA LEE VARNEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL CASE NO. 1:23-cv-646-ECM |
| | ) [WO] |
| THE CITY OF OZARK, *et al*., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

In September 2020, Plaintiff Alana Lee Varney ("Varney") was arrested for possession of marijuana outside of her counseling services office. Over three years later, she sued the City of Ozark, its police department, and multiple fictitious defendants in the Circuit Court of Dale County, Alabama, alleging thirteen causes of action. Now pending is a motion by the City of Ozark to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment. (Doc. 5).[1] The motion is fully briefed and ripe for review. For the reasons that follow, the motion to dismiss is due to be granted.

**II. JURISDICTION**

The Court has subject matter jurisdiction over the federal law claims in this proceeding pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law

---

[1] The Court utilizes the document numbers and page numbers generated by the CM/ECF filing system.

claims pursuant to 28 U.S.C. § 1367.  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

### III.  LEGAL STANDARD[2]

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (alteration in original) (citation omitted).  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555–56, 570.  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Indeed, "[a] pleading that offers 'labels

---

[2] Plaintiff Varney cites to the "no set of facts" standard (doc. 14 at 1–2) which has been abrogated. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).  The City of Ozark cites to both the standards for Federal Rule of Civil Procedure 12(b)(6) and summary judgment. (Doc. 6 at 12–15).  Because the Court resolves the action solely on the Rule 12(b)(6) motion, it does not state the legal standard for a motion for summary judgment. (*See infra* Discussion Section B).

and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

## IV.  FACTS[3]

**A.  Factual Background**

In September 2020, Alana Lee Varney offered counseling services as an independent contractor for the Dale County Department of Human Resources ("DHR"). On the afternoon of September 14, 2020, Varney stopped by her office—which she had closed to the public because of the COVID-19 pandemic—after noticing an individual standing outside the office doors. Upon arrival, she discovered the individual to be Breland Danner ("Danner"), an employee of DHR. Danner informed Varney that an anonymous report had been made suggesting Varney's son was involved in drug use. The report relayed that Varney's son had been found alone in Varney's office with an odor of marijuana present. (Doc. 1-1 at 4). According to Danner, the report was made to employees of DHR, who subsequently contacted the police. Varney, who had not been to her office that day, assumed this incident to be a misunderstanding. She told Danner that she was "going to leave to find her son and find out what was going on" before Danner informed her that she "could not leave and, that if she did, she would be in trouble." (*Id.* at 3, para. 18). Varney opted to remain at the scene to "keep what she thought was a good relationship with DHR from imploding." (*Id.*).

---

[3] The Court recites only the facts pertinent to resolving the City of Ozark's motion to dismiss. For purposes of ruling on the motion, the facts alleged in the complaint and reasonable inferences drawn therefrom are set forth in the light most favorable to Varney.

Around thirty minutes later, Officer Benjamin Price ("Officer Price") arrived. Varney informed Danner and Officer Price that she was unaware of her son's whereabouts and needed to leave to find him. Danner, who had been in contact with other DHR employees and Stephanie McKnight, the DHR Director ("Director McKnight"), "reluctantly agreed to let" Varney meet her back at DHR. (*Id.* at 4, para. 21). But as Varney got into her car, Officer Price "placed his hand on his gun, [and] yelled" at her to step out of the vehicle. (*Id.* at 4, para. 22). According to Officer Price, another officer was enroute and Varney was not allowed to leave. At this point, Varney contacted her attorney by phone. Officer Price then told Varney (as her attorney listened) that although she was not a suspect or witness, she was being detained in connection with a narcotics investigation based on the report of marijuana. Varney "came to understand it was [Officer Price's] first day on the job and expected the issue to be resolved whenever another officer became involved." (*Id.* at 5, para. 23).

Some twenty minutes later, two other individuals showed up: Officer Parks,[4] another Ozark police officer, and Lou Ann Stevens ("Stevens"), another DHR employee. Varney, whose concern about her son was growing, was again told that she was being detained and could not leave. Officer Parks then noticed car keys on the dashboard of Varney's son's car, which was parked in the office parking lot.[5] At Officer Parks' instruction, Varney took the keys out of the car and handed them to him. Officer Parks

---

[4] Officer Parks' first name is not alleged in the complaint.

[5] Varney later discovered that her son had parked in the lot, left his phone in the office, walked across the street to get pizza, and did not want to return after noticing the police presence.

then tried different keys to unlock the office door and, upon finding the right key, let himself and Stevens (who was taking instructions from Director McKnight) into the office.

"Carpet fresh"[6] covered the office floor and two aromatic diffusers were burning different scents. As the group entered the office, Officer Parks and Stevens mentioned smelling marijuana. When asked if she also smelled it, Varney said she smelled the carpet fresh on the floor. She then tried to call her son again and heard his phone ringing in a back room of the office. In the back room, Varney found her pet dogs. She worked to move the dogs to another room and, as she did so, she found Officer Parks looking in a drawer in a side room. Stevens then began asking Varney questions and, by the time Varney finished with Stevens, Officer Parks "had made his way into her personal office and noticed a digital scale" on her desk.[7] (*Id.* at 6, para. 29). Officer Parks then began opening drawers on Varney's desk until she questioned why he was doing so. When Officer Parks asked her if she had a problem with his actions, Varney said yes. At that point, all three walked outside and Varney locked the doors to the office. Officer Parks informed her she was still unable to leave and that he was applying for search warrants for her office, car, and house after seeing the digital scale.

As Varney waited for the search warrants, Ozark Police Chief Marlos Walker ("Chief Walker") arrived. Chief Walker asked Varney why she "retracted permission to search" her office, to which she replied that "she never gave permission to search." (*Id.* at

---

[6] Although the complaint does not allege anything further about "carpet fresh," the Court understands the reference to indicate a solution, often scented, containing baking soda used to help eliminate odors trapped in carpet fibers.

[7] Varney asserts that the digital scale was related to virtual school activities.

6, para. 32). Despite Chief Walker's efforts to convince Varney that she had, in fact, consented to a search, she remained adamant that she had not. After Varney's son arrived on the scene, an employee of DHR took him for a drug test. He later tested negative for the use of drugs.

A lab technician then arrived at Varney's office to administer her a drug test. Varney admitted that, because of a recent visit to a friend in a state in which marijuana was legalized, she would test positive for the substance. She then refused to take a drug test or sign any paperwork. When Stevens informed Varney that her children would be removed from her care and placed in a foster care system if she did not submit to the test, she reluctantly agreed.[8] Around 5:30 p.m., Officer Parks, along with other officers, returned to the scene with search warrants. The officers conducted searches of Varney's office and car. In her office, the officers found ashes from incense—which the officers labeled as marijuana ashes—and "cigar guts" from previously smoked cigars by Varney's husband. (*Id.* at 8, para. 39). In her car, they found "a blunt and some weed in a cigar pack in her vehicle." (*Id.* at 8, para. 37). Varney was then arrested.

On October 10, 2023, Varney brought this action in the Circuit Court of Dale County, Alabama. The Defendants removed the action to this Court on November 6, 2023 (doc. 1) and filed the pending motion that same day (doc. 5).

---

[8] Whether Varney's drug test came back positive or negative for any narcotics is not alleged.

## V.  DISCUSSION

In her complaint, Varney asserts thirteen causes of action against three Defendants: the City of Ozark ("the City"), the Ozark Police Department ("OPD"), and Fictitious Defendants A through H.  She has since affirmatively abandoned all but two claims. (*See* Doc. 14).  The City moves for dismissal under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56.  The Court begins with the motion to dismiss.

**A.     Motion to Dismiss**[9]

In turning to the City's motion to dismiss, the Court addresses the claims against the OPD and fictitious defendants.  Next, the Court proceeds with a brief examination of Varney's abandonment of many of her claims.  Finally, the Court analyzes the two remaining claims that Varney maintains—Counts I and II.

### 1.     *The OPD and Fictitious Defendants A Through H*

Varney sues multiple different parties: the City, the OPD, and Fictitious Defendants A through H. (Doc. 1-1 at 1–2).  The City argues for the dismissal of the other parties because the OPD "is not a suable entity," and because "the complaint does not identify the fictitious parties with sufficient clarity to allow service of process." (Doc. 6 at 15–16).  As described further, the Court agrees with the City on each point.

First, Varney cannot sue the OPD because it lacks the necessary capacity to be sued. "[C]apacity to sue or be sued shall be determined by the law of the state in which the district court is held." *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (citing FED. R. CIV.

---

[9] The Court declines to take judicial notice of the forty-nine pages of exhibits the City submitted in support of its motion to dismiss.

P. 17(b)).  Under Alabama law, a police department lacks the capacity to be sued. *See Ex parte Dixon*, 55 So. 3d 1171, 1172 n.1 (Ala. 2010); *see also Rogers v. Howell*, 2020 WL 520993, at *2 (M.D. Ala. Jan. 7, 2020), *report and recommendation adopted*, 2020 WL 522018 (M.D. Ala. Jan. 31, 2020) (finding that the Dothan Police Department is not a legal entity subject to suit); *Johnson v. Andalusia Police Dept.*, 633 F. Supp. 2d 1289, 1301 (M.D. Ala. 2009) (finding the same about the Andalusia Police Department).  Varney does not argue otherwise in her response brief. (*See generally* doc. 14).  Because the OPD is not a suable entity, the claims against it are due to be dismissed.

Second, Fictitious Defendants A through H are not identified with the level of specificity needed to maintain this action against them.  "As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam).  The Eleventh Circuit recognizes an exception to this rule "when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" *Id.* (quoting *Dean*, 951 F.2d at 1215–16) (internal quotations omitted).  In other words, "real parties sued under a fictitious name" satisfy the exception, while simply "suing fictitious parties" does not. *Dean*, 951 F.2d at 1215–16 (holding that a fictitious party plead as "Chief Deputy of the Jefferson County Jail John Doe" was described with sufficient clarity to allow service of process on the "Chief").

Varney lists Defendants A through H as "fictitiously named defendant[s] whose names are presently unknown to the Plaintiff and who are liable for damages owed to Plaintiff." (Doc. 1-1 at 1–2, para. 4).  She represents that she "will add those defendants by amendment once their identities are known." (*Id.*).  She adds nothing further in her

8

complaint. This does not satisfy the Eleventh Circuit's requirement that a party provide a sufficient level of specificity to identify a fictitious party, nor does it provide an adequate description to allow for service of process. Moreover, none of Varney's claims refer to actions taken by any fictitious parties. Varney's allegations against Fictitious Defendants A through H are insufficient and all claims against them are due to be dismissed.

### 2. *Counts III Through XIII*

Varney asserts thirteen claims in her complaint, many of which sound in state law. (Doc. 1-1 at 10–15). In her response to the motion to dismiss, she "voluntarily dismisses" all but Counts I and II. (Doc. 14 at 1). Although Federal Rule of Civil Procedure 41 bars her from voluntarily dismissing specific claims against the City rather than dismissing the entire action, *see Rosell v. VMSB, LLC*, 67 F.4th 1141, 1144 (11th Cir. 2023), the Court agrees with the City's contention that "Varney's concession is not without legal effect." (Doc. 17 at 13). Varney's response acts as a waiver and abandonment of Counts III through XIII: she committed an "intentional relinquishment or abandonment of" those counts. *United States v. Campbell*, 26 F.4th 860, 872 (11th Cir.), *cert. denied*, 143 S. Ct. 95, 214 (2022). And as noted by the Eleventh Circuit, when "a party affirmatively and intentionally relinquishes an issue, then courts must respect that decision." *Id.* Thus, where Varney has opted to forgo advocating for her claims, this Court will not "depart from the principle of party presentation basic to our adversary system" and "override [her] deliberate waiver." *Id.* (quoting *Wood v. Milyard*, 566 U.S. 463, 472–73 (2012)). Accordingly, Counts III through XIII are due to be dismissed.

### 3.     *Counts I and II*

The Court now turns to Counts I and II.  After considerable effort to interpret Varney's claims and submissions, the Court finds that both Count I and II are due to be dismissed.

#### a.     **Count I**

Count I is titled "42 U.S.C. 1983 – Deprivation of Constitutional Rights." (Doc. 1-1 at 10).  In this count, Varney alleges that Defendants, "acting under color of law within the meaning of 42 U.S.C. § 1983, deprived the Plaintiff of her right of life, liberty, and property as afforded her by the Fourteenth Amendment of the United States Constitution in violation of 42 U.S.C. § 1983." (*Id.*).  Varney continues by alleging that the City "acted with malice and extreme indifference" by "providing false information to police officers" and executing "a false and defamatory sworn deposition leading to the arrest and prosecution" of her. (*Id.*).  Finally, Varney claims that the "OPD, acting under Defendant City, accepted and approved the actions of OPD in contributing to the violations" of her "Fourth Amendment Rights." (*Id.*).

In its principal brief, the City interprets Count I as asserting "a Fourth Amendment claim through the Fourteenth Amendment's incorporation doctrine." (Doc. 6 at 20).  It then argues that Varney's claim, whether it be malicious prosecution or false arrest, must fail. According to the City, Varney's claim (which the City more or less assumes to be a false arrest claim) is barred by the statute of limitations, fails to plausibly demonstrate the violation of a Fourth Amendment right, and does not plausibly demonstrate a municipal custom or policy that constituted deliberate indifference to that right. (*Id.* at 21–28).

Varney, in response,[10] appears to assert that Count I is a Fourteenth Amendment due process claim. She quotes the language of § 1983 before stating that the Fourteenth Amendment "assures procedural fairness and covers a substantive sphere as well." (Doc. 14 at 18). Unhelpfully, Varney includes no legal analysis following her assertions about § 1983 and the Fourteenth Amendment, leaving the Court to guess what her claim is.

Varney asserts a § 1983 claim against the City, a municipality. A municipality cannot be held liable under § 1983 on a *respondeat superior* theory; it "can be found liable . . . only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). "[T]o impose § 1983 liability on a municipality, [Varney] must show: (1) that [her] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

Varney fails to clearly identify under what constitutional amendment she asserts her claims against the City. Regardless of the constitutional right that Varney asserts—be it under the Fourth (malicious prosecution or false arrest) or Fourteenth (procedural or substantive due process) Amendment—her complaint fails to sufficiently allege the second and third elements required for municipal liability. Varney's complaint contains no

---

[10] Notably, Varney did little to elucidate her claims in her response brief. (Doc. 14). First, Varney cites the wrong standard of review. (*Id.* at 1–2). Second, Varney uses thirteen pages of briefing to rehash, in identical copy-and-paste form, the factual allegations contained in the complaint. (*Id.* at 2–15). Third, Varney argues against the City's invocation of qualified immunity (*id.* at 15–17); however, the City has not raised a qualified immunity defense. Finally, Varney provides no meaningful analysis of her federal claims. Instead, she largely resorts to citing case law without context or analysis.

supporting factual allegations pertaining to customs or policies held by the City of Ozark that amount to deliberate indifference of either the rights protected by the Fourth or Fourteenth Amendment.  And because the facts are barren in that regard, Varney fails to adequately allege causation.  Moreover, Varney's complaint details only her interaction with officers from the City of Ozark.[11]  Yet, when the case involves "isolated acts by government officials," the municipality "may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, 'that is, acts which the municipality has officially sanctioned or ordered.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).  There are no factual allegations indicating that the City officially sanctioned or ordered actions against Varney.  And Varney's factual allegations do not support her conclusions that the actions taken against her were "accepted and approved" by the City. (Doc. 1-1 at 10).

Without sufficient factual allegations about a custom or policy, deliberate indifference, and causation, Count I (either construed as a Fourth or Fourteenth Amendment claim) is due to be dismissed.[12]

      **b.**    **Count II**

Like Count I, Varney is unclear about what type of claim she alleges in Count II. Count II is titled "Malicious Prosecution." (*Id.*).  Therein, Varney does not reference

---

[11] And while her complaint references her clientele's interactions with DHR and the court system, Varney did not sue Dale County, DHR, or other employees engaged in the other situations she mentions.

[12] Because the complaint fails to state a claim, the Court pretermits discussion regarding the City's statute of limitations defense.

§ 1983 or any constitutional amendments while alleging that she suffered "shame, humiliation, mental distress, and injury and damage to her business and reputation" as a result of false charges against her. (*Id.*).  On its face, this count would appear to be a malicious prosecution claim under state law.  The City assumes as much. (Doc. 6 at 28).  However, in her response, Varney appears to contend that Count II is grounded in federal law. (Doc. 14 at 18–19) (quoting a Second Circuit case for the proposition that federal, not state, law determines whether a § 1983 malicious prosecution claim has been stated).  Rather than expound on the pleading of her second count, Varney chooses to forgo any further discussion or analysis, leaving the Court, again, to guess what her claim is.  Giving Varney the benefit of the doubt and analyzing Count II under both federal and state law, the result is the same: Count II is due to be dismissed.

If Varney is asserting a federal malicious prosecution claim in Count II, her claim is due to be dismissed for the same reasons Count I fails:  a lack of sufficient factual allegations establishing a municipal custom or policy and causation.  If Varney asserts a malicious prosecution claim under state law, Count II is due to be dismissed because municipalities cannot be held liable for malicious prosecution in Alabama. *Neighbors v. City of Birmingham*, 384 So. 2d 113, 113 (Ala. 1980) (per curiam); *Franklin v. City of Huntsville*, 670 So. 2d 848, 852 (Ala. 1995), *as modified on denial of reh'g* (Nov. 22, 1995); *Walker v. City of Huntsville*, 62 So. 3d 474, 502 (Ala. 2010).  Accordingly, under both federal and state law Count II is due to be dismissed.

**B.**     **Motion for Summary Judgment**

In the alternative, the City also moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (*See generally* doc. 6). Because the Court concludes that Varney's claims are due to be dismissed under Rule 12(b)(6), the City's motion for summary judgment is due to be denied as moot.

## VI.  CONCLUSION

For the reasons stated, it is

ORDERED that the City's motion to dismiss (doc. 5) is GRANTED, and the City's motion for summary judgment is DENIED as moot.

A separate final judgment will be entered.

DONE this 29th day of August, 2024.

                /s/ Emily C. Marks
                EMILY C. MARKS
                CHIEF UNITED STATES DISTRICT JUDGE